**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 20, 2025

# In the Court of Appeals of Georgia

A25A1349. WALTERS v. THE STATE.

HODGES, Judge.

A jury found Stephen L. Walters guilty of criminal trespass after he disobeyed an officer's warning and unlawfully trespassed onto property where three sisters were living and operating a music school. The State Court of Cherokee County sentenced Walters to 12 months in confinement with 120 days to serve, credit for time served, and the remainder of the sentence suspended so long as Walters met certain conditions, which included no new violations of the law. After Walters was again arrested for criminal trespass in the same neighborhood a few months later, the trial court revoked the balance of his suspended sentence and ordered that he serve his remaining time in confinement. In his appeal, Walters argues that the evidence was

insufficient to sustain his initial conviction. He also argues that the order revoking his suspended sentence from that initial conviction, following his second arrest, should be vacated because his notice of appeal acted as a supersedeas preventing the enforcement of his probationary conditions. For the reasons that follow, we affirm his initial conviction and find that we lack jurisdiction to address his claim regarding the revocation of the suspension of his sentence related to that conviction.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [Walters] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Onyeka v. State*, 374 Ga. App. 504 (913 SE2d 377) (2025).

So viewed, the evidence adduced at trial shows that Krista McCoy and her sisters, Kara McCoy and Anna McCoy, were living in a house on Pine Lark Drive in Canton. The sisters, who rented the home from their father, also ran a music school at the house, teaching voice, piano, violin, viola, and cello lessons to children and adults. In the summer of 2022, the sisters began seeing one of their neighbors, Walters, exhibit odd and disturbing behavior. In June and July, Anna received

2

unsolicited text and voicemail messages from Walters that she characterized as "abnormal" and "a little bit alarming" because they did not make sense and asserted that Anna and other "neighbors were against him." The women also began seeing Walters exhibit bizarre behavior around the neighborhood. Kara saw him yelling and appearing "outwardly disturbed." Anna saw him go onto a neighbor's porch while the neighbor was not home and behave as if he were talking with someone inside, yelling and acting upset.

On August 10, 2022, the sisters saw Walters on his own property in a very agitated state "talking extremely loudly . . . about just bizarre things that didn't make sense." Later that day, Krista observed Walters on a neighbor's property "talking to nobody." Then Krista and Anna saw Walters walk onto their property. They locked the door and moved into another room so that he would not be able to see them. He began knocking on the door. The women called law enforcement. Although Walters walked away before officers arrived, the women could hear him on the phone, telling someone "[he] knew they had the gun and he was on the way to their house."

Cody Garland, a POST-certified corporal with the Cherokee County Sheriff's Office who came to the sisters' home, testified that he received calls from more than

3

one person that day about Walters' trespassing. When Garland located Walters and began talking with him, Walters said he had a missing firearm and that Anna "knew about the gun . . . [and] had the gun[.]" He admitted going onto the sisters' property but then said they did not know anything about the gun.

Anna testified that the sisters perceived from Walters' communication with them that "he was upset with us for something that we hadn't done, [and that] we had no control over. And we knew that he seemed to be very agitated, and didn't seem to be in his right mind. . . . [W]e didn't feel safe having him on our property." As a result, the sisters told Garland they wanted him to issue a criminal trespass warning to Walters. Garland did so, telling Walters he was not welcome on the sisters' property and that if he returned, he would be arrested for criminal trespass. Walters told Garland that he understood.

On New Year's Day in 2023, the sisters threw a party at their home. They saw Walters come down their driveway and onto their porch. They locked the door but he called through the door that he wanted to talk to them. Anna declined to talk to him. Kara took a video and a photo of Walters at the door, and Anna called 911. Anna then

reported the trespass to Garland and sent him the photo and video evidence. Garland issued an arrest warrant against Walters for criminal trespass.

Walters was arrested and placed in the Cherokee County Jail. He posted bond on January 5, 2023. He was tried, convicted, and, on February 14, 2024, received a 12-month sentence "to serve 120 days in custody, credit for time served[,] remainder of time suspended" on condition of making no contact with the sisters, staying off their property, committing no new violations of law, and possessing no firearms. Walters appealed this conviction on March 14, 2024.

In June 2024, however, he was arrested on a new charge of criminal trespass because, after a warning, he trespassed on the property of Lori Sims, one of the sisters' neighbors.

The State then moved to impose Walters' suspended sentence on the basis that he had violated one of its conditions by committing a new violation of the law. After a hearing, the trial court issued an order on August 14, 2024, finding that Walters had violated his suspended sentence. The court revoked the suspension, and ordered that Walters serve the balance of his sentence in the Cherokee County Adult Detention Center.

1. Walters first argues that the evidence was insufficient to sustain his initial trespass conviction. We find no error.

OCGA § 16-7-21 (b) (2) provides, in pertinent part, that:

A person commits the offense of criminal trespass when he or she knowingly and without authority: . . .

Enters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden[.]

As outlined above, the evidence shows that the sisters were lawful occupants of the home. The evidence also shows that an officer, acting as the sisters' representative, gave Walters notice to stay off the sisters' property and told Walters that if he entered it again, he would be arrested for criminal trespass. *Rayburn v. State*, 250 Ga. 657 (300 SE2d 499) (1983) (recognizing that warnings to stay out of Greyhound bus terminal by security officers amounted to "receiving a prior notice from an authorized representative of the owner that such entry was forbidden"); *Austin v. State*, 335 Ga. App. 521, 525 (2) (782 SE2d 308) (2016) (finding that when victim instructed officer to tell defendant not to come onto her property, this

amounted to notice from an authorized representative). Because the sisters' testimony, as well as the photo and video evidence, showed Walters entering the sisters' property on New Years Day, and because Walters had earlier indicated that he understood the officer's warning to stay off the property, the jury was authorized to find that he trespassed knowingly and without authority. See *Hammond v. State*, 237 Ga. App. 238, 239 (1) (515 SE2d 183) (1999) (finding evidence sufficient to sustain conviction for criminal trespass where defendant had been warned not to enter university buildings for the purpose of sleeping, yet was again found sleeping late at night on university property); see also *Austin*, 335 Ga. App. at 525 (1) ("[I]t is for the finder of fact to determine whether the defendant acted with the requisite degree of criminal intent in engaging in the act for which he is prosecuted.") (citation and punctuation omitted). The evidence was sufficient to sustain Walters' initial February 2024 conviction for criminal trespass.

2. Walters next argues that the trial court lacked the authority to revoke the suspension of the sentence for his initial trespass because he filed his notice of appeal from that conviction prior to his re-arrest and the resulting revocation. He contends

this means his notice of appeal acted as a supersedeas, preventing enforcement of his sentencing conditions. We lack jurisdiction.

This contention of error is based on an order that was entered after Walters filed his notice of appeal from his judgment of conviction. Walters filed his notice of appeal March 14, 2024. The order revoking the suspension of Walters' sentence was entered August 14, 2024. "Given this fact, and given that [Walters] never filed a notice of appeal as to the order[] revoking [the suspension of his sentence] . . ., we lack jurisdiction to address [this claim] of error." *Watts v. State*, 334 Ga. App. 770, 771 (780 SE2d 431) (2015) (finding appellate court lacked jurisdiction to address claims of error stemming from orders revoking probation and denying appellate bond because those orders post-dated defendant's notice of appeal); id. at 780 (2); see *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (5) (646 SE2d 207) (2007) (finding that a party may not enumerate as error an order entered after the notice of appeal is filed).

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*